**IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION**

**GARY MIDDLETON, Individually
and on Behalf of All Others Similarly Situated**                **PLAINTIFF**

**VS.**                **NO. 4:18-cv-18-4112**

**HEMPSTEAD COUNTY, ARKANSAS**                **DEFENDANT**

**RESPONSE TO PLAINTIFF'S MOTION FOR CONDITION CERTIFICATION OF
COLLECTIVE ACTION, FOR APPROVAL AND DISTRIBUTION OF NOTICE, AND
FOR DISCLOSURE OF CONTACT INFORMATION**

The Plaintiff has moved for conditional certification of a collective action in order to pursue his claims, and those of others who are purportedly "similarly situated," under the FLSA. *See* Doc. ## 13-14. As part of that motion, Plaintiff's counsel seeks specific allowances to send "notices" to putative plaintiffs for this case. *Id.* Because the method, means, and manner by which the Plaintiff and her counsel seek to "notify" putative plaintiffs are overly broad and unduly coercive and intrusive, his motion should be denied. At the least, the relief he requests - to "notice," or solicit, putative plaintiffs from an ambiguous and overly broad pool for her lawyers through repetitive, potentially misleading, and coercive solicitations - should be significantly curtailed.

The FLSA authorizes collective actions for "similarly situated" employees to recover damages for violations of its overtime and record-keeping provisions. *See Ford v. Townsends of Ark., Inc.*, No. 4:08cv00509 BSM, 2010 U.S. Dist. LEXIS 46093, at 7-9 (E.D. Ark. Apr. 9, 2010) (citing *Helmert v. Butterball*, No. 4:08CV00342, 2009 U.S. Dist. LEXIS 116460, 2009 WL 5066759, at 3 (E.D.Ark. Dec. 15, 2009); 29 U.S.C. § 216(b)(2006)). "These collective actions are intended to serve the interests of judicial economy and to aid in the vindication of plaintiffs' rights." *Id.* Unlike a Rule 23 class action, a collective action under the FLSA is pursued on an opt-in basis,

requiring employees to provide their consent in writing to join the action. Id; 29 U.S.C. § 216(b).

The phrase "similarly situated" is not directly defined by the FLSA and has not been clearly defined by the Eighth Circuit; however, this district and other district courts within the Eighth Circuit have applied a two step approach in determining whether a proposed class is similarly situated. *See e.g., Helmert*, 2009 U.S. Dist. LEXIS 116460, 2009 WL 5066759, at 3. First, there is a notice stage and, second, there is an opt-in merits stage. *Id.* During the notice stage, which occurs very early in the litigation, a class is conditionally certified for notice purposes upon the plaintiffs' motion. *Id.* A class is similarly situated at this stage if plaintiffs make a modest factual showing, based on the pleadings and affidavits, that the proposed class members were victims of a single decision, policy, or plan." *In re Pilgrims Pride FLSA Litig.*, No. 1:07CV1832, 2008 U.S. Dist. LEXIS 93966, 2008 WL 4877239, at 3 (W.D. Ark. Mar. 13, 2008); *Kautsch, v. Premier Communications*, 504 F.Supp.2d 685 (W.D. Mo. 2007). Class members need not be identically situated. *Helmert*, 2009 U.S. Dist. LEXIS 116460, 2009 WL 5066759, at 3. "The more stringent factual inquiry as to whether the plaintiffs are similarly situated is made only after a more substantial record has been amassed." *Robinson v. Tyson Foods, Inc.*, 254 F.R.D. 97, 99 (S.D. Iowa 2008) (citing *Dietrich v. Liberty Square, LLC.*, 230 F.R.D. 574, 576-577 (N.D. Iowa 2005)).

The second stage comes after discovery is largely completed and is usually prompted by the defendant's motion to decertify the class. *Frank v. Gold'n Plump Poultry, Inc.*, No. 041018, 2005 U.S. Dist. LEXIS 20441, 2005 WL 2240336, at 3 (D. Minn. Sept. 14, 2005). The court then uses a stricter standard to determine whether the putative class members are similarly situated and whether the trial should proceed collectively. *Helmert*, 2009 U.S. Dist. LEXIS 116460, 2009 WL 5066759, at 3. To maintain a class at the second stage, plaintiffs must show that they are similarly

situated with respect to their job requirements and pay provisions. 2009 U.S. Dist. LEXIS 116460, [WL] at 6. "Courts will consider three factors at this second stage: (1) the employment and factual settings of the plaintiffs; (2) the various defenses available to the defendants; and (3) considerations of fairness, procedure, and manageability." *Id.*

In his motion for conditional certification, the Plaintiff defines his putative collective as follows:

> All Non-Patrol Detention Officers/Jailers employed by Hempstead County since August 1, 2015.

*See* Doc. # 13, ¶ 2.

While the above definition arguably defines a class of persons, it cannot be a "similarly situated" group, as that term is used in the FLSA. That is because the above defined class is drawn entirely irrespective of the allegations in this case and working conditions and situations of the putative members of the collective. The named Plaintiff in this case does not allege that his statutory rights were violated simply because she was employed by Hempstead County, but because the County allegedly failed to pay him in accord with the FLSA (essentially, because the County *actually paid him* with compensatory time for overtime hours worked, but allegedly paid such compensatory time at the base rate rather than time-and-a-half). The collective group to be noticed must be "similarly situated" with respect to the allegations in this case, not some other shared characteristic that has no bearing on the allegations of illegal conduct. Stated another way, "a party seeking conditional certification must generally "show[ ] that an employer's commonly applied decision, policy, or plan similarly affects the potential class members, and inflicts a common injury on plaintiffs and the putative class." *Jennings v. Cellco P'ship*, 2012 U.S. Dist. LEXIS 90994, 2012 WL

2568146, at 5. The Plaintiff's definition of the collective group, however, makes no reference to exposure to a common and unlawful policy, plan, or decision. While it purports to make such an allegation by reference to a "uniform" policy of underpayment[1] for overtime hours worked, the definition of the collective fails for any number of reasons, including that it (1) doesn't make any distinction between full-time and part-time employees, (2) doesn't make any distinction between exempt and non-exempt employees, and (3) doesn't limit the collective to only those who actually earned compensatory time (even a "uniform" policy of underpayment for overtime - which the Defendant denies - would not effect an employee who never worked overtime; further, speaking to a few em employees who allege that they worked overtime does not create a reasonable belief that the remainder did, as well). In short, putative collective plaintiffs must be "similarly situated" with respect to their allegations/claims rather than on the basis of some shared characteristic that has no bearing on the conclusion of the case - the Plaintiff's counsel proposes casting a much wider net than necessary on the basis of bare employment - in an attempt to create a larger plaintiff group. This not only defeats the purpose of a collective action (judicial economy is frustrated, not served, by the addition of plaintiffs that are not "similarly situated" and may have no claim at all), but would unnecessarily impede the progress of this case to resolution. In the end, any definition of the group of "similarly situated" persons must be targeted toward those with similar allegations/claims. Since the Plaintiff's definition does not, ismotion should be denied.

In addition to the fact that the Plaintiff's motion defines the targeted group of potential defendants in an overly broad manner, the proposed notices to the targeted group are unduly coercive

---

[1] Plaintiff's Complaint appears to concede that this is an underpayment case, not a non-payment case.

and intrusive in method, means, and manner. The proposed notices are repetitive, potentially misleading, and coercive solicitations and should, at the least, be significantly curtailed. These problems are important, especially in light of the Court's discretion and monitoring role in the notice process: "By monitoring preparation and distribution of the notice, a court can ensure that it is timely, accurate, and informative. Both the parties and the court benefit from settling disputes about the content of the notice before it is distributed. This procedure may avoid the need to cancel consents obtained in an improper manner." *Harris v. Chipotle Mexican Grill, Inc.*, No. 13-cv-1719 (SRN/SER), 2014 U.S. Dist. LEXIS 126776, at 43-44 (D. Minn. Apr. 10, 2014) (quoting *Hoffman Laroche v. Sperling*, 493 U.S. 165, 169 (1989)). Id. at 172. "Court authorization of notice serves the legitimate goal of avoiding a multiplicity of duplicative suits and setting cutoff dates to expedite disposition of the action." *Id.*

The Plaintiff's motion proposes not one, but four (and maybe more, as an alternative email notification is discussed), separate notices to the target group, twice by U.S. Mail and twice by text message (and again, perhaps, by email. This repetitive barrage of "official-looking" correspondence from all angles, replete with invocations of the Court's authority (all proposed notices begin with the caption, and, thus, the name and imprimatur of the Court), imperative commands ("CONSENT MUST BE RETURNED ..." Doc. # 13-1, p. 1), potentially misleading statements (e.g., "[absent settlement], a trial will be held...," effectively ignoring the possibility of pre-trial case resolution adverse to the Plaintiff(s)), and overly broad definitions of the putative collective, are inherently and unduly coercive and intrusive. Of course, coercion can be effective, which is essentially the only argument advanced by the Plaintiff in support of the battery of suggestive "notices" he proposes. This argument, standing alone, simply cannot be the guiding star for analyzing a proposed litany of

notices, else coercion will become the order of the day.

It is, important to note the context of the proposed series of "notices" in this case. This is not a Rule 23 certification process, where a Plaintiff's attorney is sending required notices that cut against his interests, informing already-committed plaintiffs of their right to fire the class lawyer by opting out of the litigation. This case presents exactly the opposite situation, where the Plaintiff's counsel is openly soliciting new clients, hoping to profit from the arrangement.[2] Where heavy handedness might be tolerated, or even encouraged in the Rule 23 class opt-out scenario, it cannot be tolerated in the FLSA opt-in process. Notably, Arkansas' Supreme Court Committee on Professional Responsibility (along with every other state, to undersigned counsel's knowledge) has recognized the ethical minefield inherent in the solicitation - even more specifically, the written solicitation - of potential clients by attorneys and has enacted a series of rules, 7.1-7.5, addressing this fraught terrain. While the Court certainly has discretion to authorize different sorts of communication in this context, the Supreme Court's Rules should certainly be considered, particularly with respect to their clear concern about coercion by lawyers engaging in written solicitation of prospective clients.

In the end, the Plaintiff's motion for conditional certification fails because he seeks to cast too wide a net for additional plaintiffs, in a manner unrelated to the allegations in this case, which allegations should serve to define the collective group to be noticed. Even if the Court were inclined to grant conditional certification, however, the Defendant would respectfully request that the noticing of putative plaintiffs be significantly curtailed to avoid excessive coercion and intrusion (particularly

---

[2] The notices completely ignore the normal advertising requirements (e.g., "Advertisement" stamp) in the Arkansas Rules of Professional Responsibility.

here, where the Plaintiff has testified, under oath, to soliciting (apparently unsuccesfully) additional plaintiffs/clients, Doc. # 13-7). Finally, and though the undersigned counsel is aware of this Court's general practice not to hold hearings on most written motions, the undersigned counsel would respectfully suggest that a hearing on these issues might prove beneficial for all involved in order to address the numerous issues raised by the Plaintiff's motion and the potential crafting of notices.

        Respectfully submitted,

        Hempstead County, Arkansas,
        *Defendant*

        Jason E. Owens
        Ark. Bar. No. 2003003
        JASON OWENS LAW FIRM, P.A.
        **Mailing Address:** P.O. Box 850
        Conway, Arkansas 72033-0850
        **Physical Address:** 1023 Main St, Ste 203
        Conway, Arkansas 72032
        Telephone (501) 764-4334
        Telefax (501) 764-9173
        email: owens@jowenslawfirm.com